Okay, the next argued case is number 181781 Sonoma Apartment Associates against the United States Supreme Court. This court should reverse the trial court's award of tax gross up damages because Sonoma offered no evidence of future tax rates or future non-rental income. Instead, using only the first page of the Sonoma Partners 2015 tax returns and for one of them the 2014 tax return. Can I just cut to the chase here? I think it seems to me you argued there are two different things that are speculative. One, the rates that Congress is going to statutorily have going forward for the next 20 years. And two, the partners actual income going forward for the next 20 years. And you object to the notion of using current rates and current income for both sets, right? In part, yes, Your Honor. So I get it with regards to the income. Starting with one year's income seems like a very narrow slice that is not indicative of future income potential. But what other measure would you have the court use for actual statutory rates other than the rates in existence? Well, Your Honor, if you can use the rates in existence, they put on no evidence of what the applicable rates would be based on the income that they had. But that's a problem, isn't it? That there was no contrary evidence. Well, that's their burden, right? Your argument is it's their burden of proof. You don't have to provide contrary evidence. But maybe I misunderstand your argument. And you're not objecting to the fact that they provided no evidence that Congress would keep the same rates. We're objecting to the fact that they provided no evidence of what future rates would be applicable to a… To them based upon their income. Correct. So it's all income driven is really what your argument rests on. In part, it's mostly income driven. But it's also… You can take the… In other cases, in the Windstar cases that this court has affirmed a tax gross up award, it was based on expert testimony of tax accountants or corporate controllers. And they did an analysis of the previous tax, several years' worth of tax returns. And they aggregated. They came up and presented evidence of what they thought the rate would be that they would have to pay on that damages award. Here, it's entirely possible. Companies do this all the time. They have to make their planning, five-year plans. They do tax planning. And predicting what tax rates are going to be applying in future years is part of that analysis. Based on the income that they expect to be earning. Based on their expected income, yes, Your Honor. And you can do that based upon, what, retrospective reviews, future plans for employment and things like that? Correct. And none of that was done here? None of that was done here. They looked at one tax year? They looked at one tax year. They looked at only the first page of the partner's individual tax returns. But they assumed it would be unchanged. That is correct. They assumed that... You don't think that meets any sort of prima facie burden, as opposed to the speculation that you're saying they need to figure out if tax is going to go up, down, you're going to be richer or poorer, as opposed to their assumption that we have all of this historical information? That is correct, Your Honor. They did have access to historical information. The expert, Dr. Benzion, could have spoken to Sonoma's tax preparer and planner, who was actually the general partner. He could have spoken to the other partners about what their expectations of future income would be. He could have done an analysis with the tax planner to predict, at least with reasonable likelihood, what would our tax rate be in the next few years moving forward. In the end, it's always going to be a very rough guess in terms of what the expected income is going to be in year 2, year 10, year 15, etc. I guess, what concrete, tangible things do you really think they should have done that they did not do here? I think it's going to be a much rougher guess when you're going out from years 10 to 20. Of course, but give me something concrete and tangible that if you were Dr. Benzion, you would have done that he actually did not do. He could have looked at the schedules attached to the individual partners' tax returns that show the sources of other income and other tax planning strategies that they were currently employing to use to offset then-existing taxes and to lower their tax burden. He could have spoken to the tax preparer. He could have consulted with the individual partners about what their expectations were. One of the partners, I don't want to give his name, was married, father, had children, was a tax attorney himself, had his own practice, and had $300,000 in gross income for the year that was used. But they only used the AGI, which showed roughly $12,500, and he took that $12,000. And that's the number he used for the next 20 or 30 years? Yes, and that was the number that Dr. Benzion used going forward, all under the assumption that it's unknown. Isn't that per se unreasonable since, I mean, if you look back a year, he probably had a lot higher income or less? I mean, isn't the real problem here that you plucked out one arbitrary point in time without looking at a pattern? Yes, yes, exactly. I think that's exactly the problem. That was the argument that was raised before the trial court and that was rejected by the trial court. But hypothetically, if they had looked at, say, the past five years and said, our most recent return shows $100,000 in income, we've had $100,000 in income for the last five years, and we have the same job, we anticipate keeping the same job, then that would be a reliable assumption to say this last year is going to be the same for the next 20 years. If that's what that evidence indicated, yes. But in this case, it's even more complicated because you had, with a general partner, he had multiple other properties that he owned. He had other sources of rental income plus other sources of investment income. None of that was considered. It was only the first page of the tax return. And I do think that, yes, we believe that was per se unreasonable to rely exclusively on that. Do we know why, for that one person, the gross was $300,000 and the adjusted was $12,000? Because most of those were startup expenses. He had incurred a lot of startup expenses. He testified in his deposition. So a lot of that income was offset through those expenses. I guess you're going to answer my question, but let me ask it anyway. Are those one-time expenses or are those same expenses expected going forward? Those expenses were not. They were expected to decrease going forward. In fact, Dr. Benzion, at pages... Which suggests that his income is going to go up going forward. Correct. And Dr. Benzion conceded that that income would go up, was likely to increase as well as another partner. Before you say he conceded, he was assuming that. He didn't have some tangible reason to think that, well, oh, I've now got new clients coming in the pipeline and they have brothers and sisters and I'm going to have even more clients after that. I mean, I guess you're asking them to do something that in its own way is a little speculative. And so I guess what I'm wondering is if someone had just gone through the exercise of taking these steps and then tried to assign certain values that on a certain level are going to be a little bit arbitrary, but are nevertheless a good faith attempt to assign certain values, would that have been satisfactory? Because then at least from your vantage point, you would have seen Dr. Benzion going through what you would think is a more rigorous attempt at examining the question of what kinds of future incomes are going to be earned. Yes, I think that would have gone far closer to satisfying the reasonable certainty requirement that was plaintiff's burden than they did merely by assuming that all of the incomes and rates from 2015 forward were going to remain flat. That was based purely on an assumption that everything in the future was unknowable. Now, one thing I thought the judge below relied on, the big hook for sort of protecting the government against an overinflated gross up award was the fact that one of the taxpayers of this partnership, you could foresee that that person's salary was not going to be sustainable at the very relative high level it was currently at the one year that was looked at. And at a certain point, it was definitely going to tail off. And so for that reason, that sort of protected the government from what ultimately would be an overinflated gross up award, even if some of the other people's incomes for that one reviewed year were likely to go up in future years. So there's some kind of a buffer to counteract any concerns about increased income for the other people. Well, the court did make two adjustments, that being one of them. However, it resulted in an increase in the gross up award because the general partners, and that one year that was relied on for the calculation, I think his income was something like $400,000 or thereabouts. And that was the projection going forward 20 years. The court said, no, go back, use the life actuary tables and see when he's likely to retire. They did that, so that loss of the current income resulted in an increase in the tax gross up amount. So the concern is with the methodology because it does seem to be sufficiently open-ended that with all of the additional information that you said is necessary for the projection, that the government's liability might increase rather than decrease. Yes, that's correct, Your Honor. The concern is... That the methodology that needs to be imposed on the taxpayer, on the prevailing party, the conceded prevailing party under ALIFA, they need to go through this very elaborate speculation as to their personal future income, not the income from the property. No, we're not challenging the methodology as Dr. Benzion used it in the ALIFA cases or in other cases where you're just looking at one person's income, and he was actually instructed just to assume that that person was likely to be employed for five more years. And so he was doing his projections in those cases, the majority of his cases he testified to on that basis. That methodology could well work in those instances. Here, when you get to cases where this court has affirmed a tax gross up, like the Windstar cases, as well as this one, when you're dealing with complex partnership income with multiple sources of revenue and income, more is required, certainly more than an assumption that any future tax rate, any future income is unknowable, therefore we're not even going to try. That's simply guessing. You might as well have picked a number out of the hat, and that does not satisfy the reasonable certainty standard, not under the restatement nor under this court's decision in Precision Pine, which you specifically said that guesswork is not sufficient, and so that's the reason that the trial court committed reversible error in this instance. And it would result, there's a concern that if this court was to affirm the trial court based on such a lack of supporting evidence for the damages award, it could result in potentially increased liability in other cases moving forward. If we're going to reduce the tax gross up to merely a math exercise and not have the sort of requirements that require the type of evidence and testimony, and competent testimony that was presented in the Windstar decisions, then it's going to lower the burden that future plaintiffs may have to meet to receive a tax gross up in other cases. Okay, let's hear from the other side. Thank you, Your Honor. Ms. Ruhl.  May it please the Court. Yes, Your Honor. So this is a case involving clear error to reverse the court has to find. Why isn't it per se unreasonable to take one year's adjusted gross income without looking at any previous years or any kind of evidence about what that person might do in the future and say this person is going to have the same income for the next 30 years? That's not economic reality for a lot of people. Yes, Your Honor. The reason that that process would not have been unreasonable is that in combination of looking at the four partners, it was the most conservative estimate because the amount by which the highest grossing, highest percentage partner, he got overcharged more than his children could possibly have been undercharged. But the more fundamental aspect is that that's not what happened. But we know that, though, because we don't have any evidence. They're just picking one number snapshot for one year and saying this is going to be the same forever. And you're saying, well, that's a rough, you know, by the numbers estimate. That's good enough. And the trial court seemed to accept that because she said, well, all these numbers are going to be speculative. But don't you agree that there's a line where something is speculative but still supported by evidence and something that's just entirely speculative and unsupported? And if you fall below that line, then it's not good enough. Your Honor, the trial judge addressed— Let's talk about that specific example of the attorney who had a $300,000 gross income but a $12,000 adjusted gross income. And that $12,000 was used as the income for all 30 years, right? No, Your Honor. That's my understanding. Right. So there's two parts to this. For that person's income. I understand, yes. That was the income that was used, right? No. What was used, then? What was used, because the trial court addressed this at the trial level and adopted the government's argument and said, no, there should be an apples-to-apples comparison. So we should not be looking at the wage income for one side but not the other. We should be looking at the real estate income for both sides, to have an apples-to-apples comparison. But that personal income, the wage income, plays into the calculation, doesn't it? It does not. It fell out, and the revised calculations were accepted by the government. What are the revised—for the gross up award? For both.  No, for both, Your Honor. They conceded the expectancy damages. I'm talking about the gross up. Are you saying that $12,000 was not the assumption that your expert relied on for this individual's wage income going forward? In the final damages calculation incorporated into the judgment, no, it was not. The gross up part. Right. In both the gross up— Can you show me where that was done? Because that's not what the government says. I understand that the government appeared to have a misconception. That's not what your expert said. Your expert said he's going to rely on one year of this person's income and assume it's going to be the same going forward. Isn't that what he said? At trial, that's what he said, and the judge disagreed with him. She said, no, that's not a correct way to do it. I want you to go back and recalculate, expert. Dr. Barry Benzion, go back, redo it. So where can you show us, in the lower court's opinion, where she says, I reject using the $12,000 adjusted gross income number for that particular individual for years 2016 to 2035? I'm also, I guess, under the impression that that's what was relied on. We're going to take one data point, a particular year, and then just draw a straight line, a flat line across the next 20 calendar years and assume that that particular individual will, with his tax and law practice, continue to make $12,000 a year for the next 20 years. Yes, Your Honor. This is discussed in the briefing, and it is from appendix, page 96, and I can read what the court said. It was also in the respondent's brief at page 44. The judge said, accordingly, when recalculating the tax neutralization payment... Can you help me where in page 96? Sure. Okay, it's towards the lower half, in the middle of the penultimate paragraph before the conclusion, right? I can go find it. I quoted it at page 44 in the respondent's appellee's brief as well, and... Oh, I'm sorry. Let me try again. It's near the top of page 96. You're accordingly. All right, so the court directed Dr. Benzion to go back and recalculate taking out the wage income and only having the rental income. The future rental income was established by expert testimony, which was really not contested by Mr. Burwell looking at future rates anticipated based on his market studies and comparatives in the area. And both calculations, in order to have an apples-to-apples comparison, were recalculated for that. What's going to be the tax rate on that particular income? The government received those calculations, did not object to the calculation, and those were the numbers that are incorporated into the final judgment. So the answer is no, that wage income is not the basis of this calculation. You're saying the sentence near the top of page 96. Accordingly, when recalculating the tax neutralization payment it is owed, plaintiffs shall omit wage and other non-real estate income from Dr. Benzion's computation of the tax consequences of the lump sum damages award? Yes. And that's what was done. But doesn't that affect the actual taxes paid? I mean, these are partners, right? Do they pay income taxes as individual partners? They do. It flows right through to the individual partners. Well, then how would that even be legally reasonable if you're admitting because the other not, the wage income is directly relevant to that partner's taxation bracket? And so clearly if somebody's making a million dollars a year, their tax rate is going to be higher than if they're making $12,000 a year. And so that individual wage income or non-rental income, whatever you want to call it, is directly relevant. So if she threw that out altogether, then it seems even more legally erroneous. The government requested that comparison and the judge adopted it. I have a feeling your friend sitting there is not going to agree with that assessment. They did though. Can you point that to us where they did? It was in their argument and I could certainly, I don't have that page citation, I could send a letter. I didn't see any of that in their blue brief. Did you point that out in your red brief? That the government was the one who had requested it? Yeah. I believe so. I mean, we're hearing an argument right now from you that I didn't read in these briefs. So I'm a little confused about what's going on. This was starting at page 43 in my brief. I'm looking. Okay, this is this argument, right? I see what it's the same argument. But how is wage income irrelevant to the partner's actual tax bracket? It is not irrelevant to the partner's actual tax bracket overall. If you look though at the damages as the first dollars that are received, it affects, you have an equal calculation there. If you look at it as a whole, and you say, okay, including in the wage income, what do we look at? Then I would still contend that in fact, Dr. Benzion had prior years to look at. The 12,500 income, for example, was not a wildly weird one year amount. It had been in place, that kind of very low income had been in place for the last several years. He looked at the last four years of income because you had prior damages. And what were the economic circumstances and job experience of that person for those previous years? That person had approximately three years ago begun a law practice and had testified that he had high startup costs. So it was not expected to last forever. He optimistically hoped to be making more income as an attorney than the net profit that he was showing there. It's more about he just had very, very high reported expenses every year. His income was not small. His income was reasonable. It wasn't insignificant. It's just that for whatever reason, he kept reporting $275,000 of expenses every year. Yes, Your Honor. The expenses were high as well as the income. So there was not—ultimately, Dr. Benzion opined that it was reasonable and conservative to take the final year and to take the gross income from all sources, and that was his opinion at trial. He had the backup information, and he decided it was— Did he say, for this particular partner, I'm going to look at his past three or four years, and then I'm going to average those three or four years? No, he did not say that. My understanding is he only used a single data point. He had all of the data for the past few years. He used the most recent year and carried it forward at trial for all of the partners, including the one who would probably retire and earn less, and that was not entirely corrected by the trial court below. That was a very conservative assumption. But you say it's a conservative assumption. A mistake in the government's favor doesn't mean that the overall methodology is correct. There's some mistakes here. There's some mistakes here. If it's a mistaken methodology, then you need to do a correct methodology. I do not believe it was a mistaken methodology, Your Honor. I believe that— How is it ever reasonable—again, let me ask you this. To take one single data point of salary for each of these individual relevant people and without any other evidence of whether they're going to have consistent salary or not, say, we're just going to assume that. How is that ever reasonable without any notion that this person is going to have the same job, is going to live in the same area, and have the same kind of pay scale or things like that? I get it if this person is a GS-12 worker at a government agency. They've been working at this job for 20 years. They plan to work at it for another 20 years. They're going to have the same salary with minimal cost of living increases. That makes sense. But he didn't testify to any of that evidence. He plucked out single data points and said, well, we're just going to assume this without any reason to assume that assumption is rational. It's kind of hard to draw a line with a single data point. It's also hard to draw an accurate methodology when you are looking at a term that stretches decades. And that problem lies directly at the government's feet. No, it does not. It is your burden of proof on this issue. And so if you submit deficient proof, then that's not the government's fault. Sure. I agree entirely with you that predicting somebody's income going forward 20 or 30 years is going to be speculative no matter what. But there's a certain line of speculative that's OK, and there's a certain line that's not. Relying on one single data point without any explanation of why that's correct seems to be not. If you looked at the past 10 years and you'd said, here's the trajectory. It's flat. We're going to assume it's going to stay flat. Then that might be good enough. Or if you looked at the trajectory and said it's going up by 5% each year and said he's going to keep that trajectory. Or for the older partner, if you said, look, he's had this income level. He's probably going to maintain the same one, but he's going to retire and it's going to drop down. None of that was done. It was one single data point. How is that sufficient evidence for a reasonable approximation of what's going to happen for 20 or 30 years? I believe that it was reasonable in the aggregate that Dr. Ben-Zion looked at the- I'm not buying your aggregate argument among the different partners. I think that to have some kind of reasonable degree of certainty here, you have to look at each of these people individually. Because they're going to have differing incomes, and their tax consequences are going to be different. Yes, Your Honor. The people were looked at individually. Based upon one single data point. The data was available for the prior years. You keep saying it was available, but he didn't use it. If it was available and he used it and we had the same conclusion, we probably wouldn't be here. Because the government probably wouldn't have appealed. But he used one arbitrary data point and didn't explain why that was indicative of somebody's expected income for the next 20 years. I'm not going to be the dead horse. You see where I am. I think that's unreasonable. I don't believe that there are any- There are prior authorities. There's a line of cases. And Dr. Ben-Zion testified to his experience in using the most recent year. There was not any authority that was pointed out at trial that using one year under these circumstances was, or under other circumstances, was unreasonable. Weren't those much smaller time periods? Some were and some weren't, Your Honor. In Hook versus Sheraton, for example, that went out 40 years based on a presumed income from a fellow who was in, I think he was around 20 years old. And it assumed that he would get a job that he, at that point, only wished to have and would have a career. And it took his income from that. There are other cases, for instance, Felder. But that's the problem is it relied on other evidence rather than one arbitrary data point. It relied on evidence that he might get this job. He would have a career for the next 40 years. And his income from that job would be X amount. That's not what he did here. In fact, if he did that and said, this guy's a tax, whatever, whatever kind of attorney he is, and said, this guy's had a lot of startup costs and things like this, so it's flat here. It's probably going to go up a little bit. I'm going to account for that. You'd be OK. But man, I hope this guy's not going to earn $12,000 a year for the next 30 years as an attorney. Otherwise, he's not going to be able to pay back his law school loans. I mean, it's just an unreasonable assumption to use that $12,000 number. I believe that Dr. Benzion looked at the data. And I understand, Your Honor. Sorry. I'm beating a dead horse. You're out of here. I don't have any other questions. Thank you. Anything else for Ms. Will? Thank you, Ms. Will. If I could just address one quick point. Mr. Roche? Thank you. I'm confused as to what she was arguing about on that opinion. Can you at least give us your view about that? Yes, we did. We did point out that discrepancy in the tax neutralization calculations at trial. The trial court, and we did that. I don't think that we have the transcript pages in the appendix here. But as I recall, we were doing that to show that the entire methodology was flawed and not reasonable. The trial court did remove the non-rental income from that neutralization calculation. However, as Your Honor pointed out, and we addressed this. Is that because the gross up was actually counting other income when all you look at for the gross up is the damages from the rental income? In essence, yes. But for determining the individual partner's tax brackets, you, of course, have to include their wage income. Correct. Exactly. And the problem with that is all of that other income, that's not how taxes are calculated. And the expert that we had testify, his unrebutted testimony was that this calculation was not in compliance with the Internal Revenue Code. And when they go to pay these taxes, all of that income is going to go in to determine what rates apply. And we pointed that out at page 29 of our reply brief, and this was addressed in Sonoma's red brief. Maybe the right solution here is to vacate and remand and get a more rigorous set of evidence into the record to make a proper judgment. Sonoma already has been paid $4.2 million in their expectancy damages. That went through last year, I believe. They had their chance at court to present. We were raising these objections, these concerns about their expert's testimony and the lack of testimony of any kind of tax preparer or tax expert or accountant to make these projections. They had their chance, and I think a remand here would be unfair to the United States in this instance. Anything else for Mr. Welch? Thank you. Thank you both. The case is taken under submission.